UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **EDEN CASTLEBERRY COOK,** | : | Case No.: 25-cv-00848-SJD |
| *individually and on behalf and as next of friend of her minor* son, **W.J.,** | : | Judge: Dlott |
| PLAINTIFFS, | : | |
| -v.- | : | |
| **INDIAN HILL EXEMPTED VILLAGE SCHOOL DISTRICT,** *et al.* | : | |
| DEFENDANTS. | : | |

## DEFENDANTS INDIAN HILL FOOTBALL CLUB, SEAN MCCHESNEY, CHRISTOPHER N. BORTZ, AND BRIAN CURRIN'S MOTION TO DISMISS

Defendants Indian Hill Football Club ("IHFC"), Sean McChesney, Christopher N. Bortz, and Brian Currin (collectively, the "IHFC Defendants"), by and through counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss Plaintiffs' claims for Intentional Infliction of Emotional Distress (Count Nine), Negligent Infliction of Emotional Distress (Count Ten), Negligence (Count Eleven), and Civil Hazing under R.C. 2307.44 (Count Twelve). A memorandum in support of this Motion follows.

1

Respectfully Submitted,

/s/ *Seth Alan Schwartz*
Seth A. Schwartz (0080961)
Ilana L. Linder (0095622)
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: 513-721-5525
Facsimile: 513-721-4268
Seth.schwartz@manleyburke.com
ilana.linder@manleyburke.com
*Co-Counsels for Defendants Indian Hill Football Club, Sean McChesney, Christopher N. Bortz, and Brian Currin*

/s/ *Michelle A. Cheek*
Michelle A. Cheek (0086476)
FLAGEL & PAPAKIRK LLC
50 E Business Way, Suite 410
Cincinnati, OH 45241
Phone: (513) 984-8111
Fax: (513) 984-8118
mcheek@fp-legal.com
*Co-Counsel for Defendants Indian Hill Football Club, Sean McChesney, Christopher N. Bortz, and Brian Currin*

/s/*Bradley A. Powell*
Bradley A. Powell (0034478)
DRODER & MILLER CO., L.P.A.
250 East Fifth Street, Suite 700
Cincinnati, Ohio 45202
513-721-1504 ext. 201
bpowell@drodermiller.com
*Attorney for Defendant Brian Currin*

MEMORANDUM IN SUPPORT

**I.    INTRODUCTION**

This action stems from two alleged incidents of student-on-student incidents involving Plaintiff W.J., a minor: one occurring after a youth football practice on September 18, 2025, and another during school recess on October 28, 2025. The Indian Hill Football Club ("IHFC") Defendants (including IHFC, Sean McChesney, Christopher N. Bortz, and Brian Currin (collectively, the "IHFC Defendants")) include a non-profit youth football club and three of its volunteer coaches. The IHFC Defendants had limited involvement only with the September incident, which took place *after* practice and outside the scope of IHFC activities. Plaintiffs seek to hold the IHFC Defendants liable for alleged inaction following that isolated post-practice altercation, asserting claims against the IHFC Defendants as follows: (Count Nine) intentional infliction of emotional distress; (Count Ten), negligent infliction of emotional distress; (Count Eleven) negligence, and (Count Twelve) civil hazing.

However, as detailed below, each of these claims fails as a matter of law. The IHFC Defendants had no prior notice of any racial harassment, had no supervisory authority over school recess, and had no duty to prevent unrelated school-recess alleged violence weeks later. The IHFC Defendants' conduct amounts to, at most, alleged omissions or unsatisfactory responses that do not meet the high thresholds for these tort claims under Ohio law. Moreover, the volunteer coaches are immune from negligence-based liability under Ohio's charitable immunity statute and the federal Volunteer Protection Act. For these reasons, all claims against the IHFC Defendants must be dismissed under Rule 12(b)(6).

3

## II. STANDARD OF REVIEW

A motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv*, 487 F.3d at 476.

Although the standard does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or demand a showing of probability, *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013), the factual allegations set forth in a complaint to support a claim "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Critically, mere formulaic recitations of the elements of a cause of action will not suffice to survive dismissal and a court is not required to accept as true all legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (explaining a "plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action"). And, of course, a court and opposing parties "should not have to 'fish a gold coin from a bucket of mud' to identify the allegations really at issue." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021). Here, Plaintiffs are "armed with nothing more than conclusions" leaving the IHFC Defendants fishing in a bucket of mud. *Iqbal*, 556 U.S. at 679. Dismissal of the entire Complaint against the IHFC Defendants is appropriate.

4

**III.** **ARGUMENT**

The Complaint fails to allege viable causes of action against IHFC Defendants because of the (A) Ohio Charitable Immunity Statute and Federal Volunteer Protection Act; and also because the Complaint fails to state a claim related to (B) intentional infliction of emotional distress; (C) negligent infliction of emotional distress; (D) negligence; and (E) Ohio Revised Code Section 2307.44.

    A.    <u>Charitable Immunity Statute and Federal Volunteer Protection Act</u>

Ohio Revised Code Section 1702.55 provides a complete defense to all claims brought in the Complaint against Bortz, Currin, and McChesney. Specifically, Section 1702.55(A) provides that "[t]he members, the directors, and the officers of a corporation shall not be personally liable for any obligation of the corporation." By its plain language, this statute creates a complete liability defense for individuals, such as all three coaches, acting in good faith as volunteer members, directors, or officers of a not-for-profit organization acting within the scope of their official functions. IHFC is an Ohio non-profit corporation.[1] See Exhibit A.

Here, these are volunteer coaches and Plaintiffs do not assert that any of these three individuals were compensated for their services. Rather, all three committed their time to IHFC as an act of public service. This is precisely the kind of activity the statute was meant to protect. So, Plaintiffs may disagree with decisions made, or actions taken, by the coaches and officers, the fact remains that all alleged actions of which Plaintiffs fault the individual coaches and officers cannot subject Bortz, Currin, or McChesney to personal liability pursuant to Ohio law.

---

[1] Although this fact is not alleged in the Complaint, courts may take judicial notice of public records, including documents filed with a secretary of state, without converting a motion to dismiss into one for summary judgment. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

Similarly, the federal Volunteer Protection Act ("VPA") also provides to individual officers or members such as Bortz, Currin, and McChesney a complete defense. *See* 42 U.S.C. § 14501. In relevant part, the VPA provides that "no volunteer of a nonprofit organization… shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity" so long as the harm was not caused by "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed *by the volunteer*." (Emphasis added.) *Id.* at § 14503(a)(3).

Ohio Revised Code Section 2305.38 similarly provides that a volunteer of a nonprofit organization is immune from civil liability for acts or omissions occurring within the scope of volunteer responsibilities unless the conduct constitutes willful, wanton, or reckless misconduct. The statute immunizes volunteers from ordinary negligence claims and reflects Ohio's strong public policy of encouraging volunteer service. Plaintiffs make no allegations that Bortz, Currin, or McChesney acted in a way that meets the high standard to vitiate immunity under the VPA and R.C. 2305.38, requiring that the case be dismissed against all three Defendants on this basis.

B.  Intentional Infliction of Emotional Distress (Count Nine)

Plaintiffs fail to allege the necessary elements to sustain a claim for intentional infliction of emotional distress (IIED) against any IHFC Defendant. To be entitled to relief as a matter of law on an IIED claim, Plaintiffs must meet a four-factor test. Specifically, plaintiffs asserting IIED claims must allege that (1) the actor either intended to cause emotional distress or knew/should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the

actor's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342 (6th Cir. 2020). Liability for IIED "will only be found in the most extreme circumstances." *Bentkowski v. Trafis*, 2015-Ohio-5139, 56 N.E.3d 230, ¶ 41 (8th Dist.). The "extreme and outrageous" element is a demanding threshold: the conduct must go "beyond all possible bounds of decency" and be "utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983).

In *Chen v. Hillsdale College*, 150 F.4th 735, 744 (2025), the Sixth Circuit held that even allegedly victim-insensitive investigatory and disciplinary responses did not rise to the "extreme and outrageous" threshold. At worst, the allegations described a process "not as victim friendly as it could have been." *Id*. at 745. Likewise, where a complaint attacks administrators' response to student wrongdoing, rather than pleading affirmative, atrocious misconduct by the administrators themselves, courts dismiss IIED claims at the pleading stage. *See Gold v. Clarksville-Montgomery County Sch. Sys.*, 2014 U.S. Dist. LEXIS 2509 (M.D. Tenn. 2014) (dismissing IIED where claims rested on conclusory allegations and omissions in responding to bullying); *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873 (6th Cir. 2020) (underscoring that omissions and inadequate responses do not become IIED absent affirmative, conscience-shocking conduct by defendants). This case is the same; the IHFC's responses to the alleged scuffle cannot rise to the level of an IIED claim as alleged.

IIED liability "clearly does not extend" to ordinary disputes over supervision, discipline, or how an institution responds to misconduct. The IIED standard targets only conduct that is

"atrocious" and "utterly intolerable," not alleged negligence, misjudgment, or inadequate administrative response. *Yeager*, 6 Ohio St.3d at 375.

Here, the core allegations against the IHFC Defendants amount to inaction or inadequate response after the September 18th incident: Bortz allegedly witnessed the attack but imposed no meaningful discipline or warnings (Compl. ¶ 277); Currin and McChesney were notified of the assault, "racial history," and risk but ignored warnings and imposed no consequences (*Id.* at ¶ 278); Bortz and Currin allowed the aggressors to continue playing and interacting with W.J. (*Id.* at ¶ 279); Bortz sent an email to parents that allegedly minimized the incident without mentioning race or violence (*Id.* at ¶ 280); and the IHFC Defendants' "silence and inaction" empowered the minors and contributed to escalation (*Id.* at ¶ 281), despite purported (although unalleged) notice of Fall 2024 racial harassment. (*Id.* at ¶ 282.) Even accepting as true all these factual allegations that might support Plaintiffs' IIED claim against each of the IHFC Defendants, Plaintiffs' IIED claim fails as a matter of law.

First, the conduct alleged is fundamentally inaction rather than affirmative acts. According to the Complaint, Coach Bortz "personally witnessed the September 18th assault, but imposed no meaningful discipline, issued no warnings, and took no steps to protect W.J." (*Id.* at ¶ 277.) Coaches Currin and McChesney allegedly "were notified of the assault . . . ignored these warnings and imposed no consequences." (*Id.* at ¶ 278.) They "allowed [the aggressors] to keep playing/attending events/interacting with W.J." (*Id.* at ¶ 279.) These allegations describe failures to discipline, failures to warn, and "silence and inaction" (*Id.* at ¶ 279), precisely the type of omissions that *Peterson* and *Anoai*, discussed below, hold cannot constitute extreme and outrageous conduct in the school context.

Second, the Complaint does not allege that the IHFC had knowledge of racial harassment prior to the alleged incident after IHFC practice. While Paragraph 282 conclusively states "IHFC had notice of the racial harassment in Fall 2024," the actual factual allegations tell a different story. The "monkey" comments are the only event occurring prior to the IHFC incident and were reported only to "district officials" (*Id.* at ¶ 2) and specifically "to then Principal Cash Hayden" (*Id.* at ¶¶ 32-33), but not also to IHFC or any coaches. Curiously, the Complaint actually faults the School District for not properly alerting others (*Id.* at ¶ 35), which undermines any inference that IHFC knew about these prior incidents. Without advance knowledge of racial harassment, the coaches' response to what they may have reasonably viewed as an isolated after-practice altercation cannot be deemed extreme or outrageous.

Third, the October 28th incident occurred entirely outside IHFC's sphere of control. While the September incident happened "after football practice ended" (*Id.* at ¶ 49), the October assault occurred during school recess, on school property, under school supervision, which is even further removed from the Defendants' control. IHFC—a youth football club—had no authority over school recess activities, no coaches present during school hours, and no ability to control student interactions during the school day. The attempt to hold volunteer football coaches liable for failing to prevent a school recess incident weeks later stretches the bounds of causation beyond recognition.

Tellingly, no problems are alleged to have occurred during actual football activities after September 18, 2025. If the coaches' handling of the September incident truly "empowered the minors and directly contributed to the escalation" (*Id.* at ¶ 281), the Complaint would need to allege continued harassment or violence during subsequent football practices or games. It contains

9

none. The allegation that IHFC should have somehow prevented violence at school, weeks later, during school hours, involving some players who happened to also be students, improperly attempts to transform volunteer coaches into guarantors of 24/7 student safety. In reality, the absence of any alleged incidents during the activities IHFC actually supervised contradicts the claim that their conduct was so extreme and outrageous as to cause the October school incident.

Finally, Coach Bortz's email communication falls far short of extreme and outrageous conduct. The October 2025, email allegedly characterized the incident as "scuffles," stated "appropriate discipline was applied," and assured parents the actions "were [not] criminal." (*Id.* at ¶¶ 75, 280.) Sending an email informing of an incident and instituting allegedly inadequate disciplinary measures does not approach conduct that transcends all bounds of decency. At most, the Complaint alleges poor judgment or inadequate communication, not the type of atrocious behavior that would be utterly intolerable in civilized society.

A defendant's conduct is not deemed extreme or outrageous when it involves "mere 'insults, indignities, threats, annoyances, petty aggressions, or other trivialities.'" *Flagg v. Staples the Office Superstore E., Inc.*, 138 F.Supp.3d 908, 920 (N.D. Ohio 2015) (quoting *Mason, v. U.S. Fid. & Guar., Co.*, 69 Ohio App.3d 309, 317 (1st Dist. 1990)). Indeed, "there is no occasion for the law to intervene in every case where someone's feelings are hurt." *Yeager*, 6 Ohio St.3d at 375. There also can be no liability for IIED based on alleged discriminatory conduct of allowing employees to use derogatory language or for the discrimination itself. *Fuelling v. New Vision Medical Labs. LLC*, 284 F. App'x 247, 262 (6th Cir. 2008) (referencing *Mowery v. City of Columbus*, 2006 Ohio 1153, ¶ 50 (finding that racial comments, jokes, and criticism—while inappropriate—were not so extreme and outrageous to go beyond all bounds of human decency)).

Similarly, IIED will not be found simply based on a school official's alleged failure to act to stop student-to-student harassment. *Peterson v. Kramer*, No. 3:13-cv-187, 2016 WL 680828, *15 (S.D. Ohio Feb. 18, 2016); *Anoai v. Milford Exempted Sch. Dist.*, No. 1:10-cv-00044, 2011 WL 53164, *9 (S.D. Ohio Jan. 6, 2011) (clarifying that alleging a school official took "no or minimal corrective action" in response to reported harassment "simply does not rise to [the] level needed to overcome the high bar for an IIED claim in Ohio"). In short, Ohio courts have consistently held that mere derogatory language or failure to prevent bullying, even in a school or extracurricular setting, does not suffice for IIED liability.

For these reasons, Count Nine of the Complaint fails to state a viable IIED claim against the IHFC Defendants and should be dismissed.

    C.    <u>Negligent Infliction of Emotional Distress (Count Ten)</u>

Turning to the related but distinct claim for negligent infliction of emotional distress (NIED), Plaintiffs' allegations suffer from similar shortcomings in foreseeability, causation, and the creation of actual peril, rendering this count equally untenable. As a threshold matter, "negligent infliction of emotional distress [in Ohio] 'can be brought in very factually-specific circumstances where the plaintiff has either witnessed or experienced a dangerous accident such that the plaintiff was subject to actual physical peril.'" *Allen-Jones v. Griffin*, No. C-220447, 2023 Ohio App. LEXIS 1745, *4 (1st Dist. May 24, 2023) (citing *Cline v. Tecumseh Local Bd. of Educ.*, 2021-Ohio-1329, ¶ 23 (2d Dist.) (referencing *Heiner v. Moretuzzo*, 73 Ohio St.3d 80 (1995))).

Even if this could be characterized as a bystander witnessing an accident, to state a claim for NIED under Ohio law, a plaintiff must allege they "suffered serious emotional distress because of this cognizable fear of peril." *Cline,* 2021-Ohio-1329 at ¶ 24. The emotional distress must be

11

"substantial," and the Ohio Supreme Court "has promulgated a non-exhaustive list of examples of what 'severe emotional distress' entails, and the examples include traumatically induced neurosis, psychosis, chronic depression, and phobia." *Id.* (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983)) ("Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.").

Here, the Complaint does not plausibly allege that the IHFC Defendants' conduct created an actual, contemporaneous risk of physical harm to W.J. during either the September or October 2025 incidents. Plaintiffs allege IHFC and the Coaches negligently placed W.J. in harm's way by failing to act after the September 18, 2025, post-practice assault, leading to the October 28, 2025, school recess attack. (Compl. ¶¶ 286–293.) However, the October incident occurred at school under District supervision, not during IHFC activities, and there are no allegations that any IHFC Defendants were present during school hours. And the September incident occurred after practice ended (*Id.* at ¶ 49), outside the IHFC Defendants' supervisory scope. Thus, no zone of physical danger was created by the IHFC Defendants.

Plaintiffs allege the Coaches "knew or should have known" of "repeated racial harassment, threats of violence, and the September 18, 2025 assault." (*Id.* at ¶ 287.) Yet, there are no factual allegations that IHFC or the Coaches had prior notice of the 2024 "monkey" slurs, which, again, were reported only to District Principal Cash Hayden. (*Id.* at ¶¶ 2, 32-33.) And there are also no allegations of racial issues or violence *during* IHFC practices. Likewise, any post-September "inaction" does not foreseeably create peril for a separate school-based attack over a month later.

12

And the two confrontations by Terrah Kocher (a parent, not a Coach) are not tied to IHFC activities or foreseeability. (*Id.* at ¶ 290.)

There is simply no causal link, as the October attack occurred at school, under District supervision, not IHFC supervision. Any emotional distress from IHFC's alleged inaction is too remote and not a direct result of the IHFC Defendants' negligence creating immediate peril. Even if peril existed and was known (which is not alleged), the alleged distress (fear of death, trauma, anxiety, nightmares, withdrawal from school activities) does not rise to the level of "serious" emotional injury—severe and debilitating, as required for NIED. There are no allegations of medical treatment, psychosis, chronic depression, phobia, or inability to cope with daily life. Finally, allegations of "failure to investigate/discipline" are conclusory and do not establish creation of physical peril.

Allowing NIED here would expand the tort beyond its intended limits, imposing liability for harms outside the defendant's control. For these reasons, Count Ten fails to state a claim and should be dismissed.

D. <u>Negligence (Count Eleven)</u>

These issues of limited duty and remote causation extend naturally to Plaintiffs' negligence claim, warranting dismissal of this claim also. To state a claim for negligence, a plaintiff must allege duty, breach, causation, and damages. *Wallace v. Ohio Dep't of Commerce*, 96 Ohio St.3d 266, 274 (2002). Duty is a question of law, and foreseeability is a required key element. *Id*.

The IHFC Defendants owed a duty of reasonable care only during football-related activities (Compl. ¶ 295). The September 18, 2025, incident occurred after practice ended (*Id.* at ¶ 49), and there are no allegations of problems during practices. These Defendants had no duty to supervise

13

after-practice activities, supervise school recess, report to the District, or protect W.J. at school events. (*Id.* at ¶¶ 289, 298–99.) As football club volunteers, their duty was limited to on-field safety during practice, not overseeing after-practice play or ongoing monitoring of school students at school. The Complaint's claims of "failure to supervise practices and recess" (*Id.* at ¶ 289) are inapplicable, as the Coaches do not control school recess and there are no allegations occurring at practice. Even if a duty existed to supervise post-practice conduct, "inaction" for a few moments related to one post-practice incident does not breach a duty. Indeed, after the conclusion of practice, any duty would shift to the parents or guardians of the practice attendees, raising the question of whether Ms. Castleberry Cook bears liability for not being present at the end of practice.

There is also a lack of foreseeability and prior notice. As with NIED, there are no factual allegations that IHFC/Coaches knew of the 2024 racial slurs (reported only to District). (*Id.* at ¶¶ 32–33, 35.) There are no allegations of "emboldening" through further IHFC incidents (none alleged to have occurred after the September incident).

Plaintiffs fail to allege any of the negligence elements, accordingly, Count Eleven should be dismissed.

E. Civil Hazing (Count Twelve)

Plaintiffs also fail to allege hazing under Ohio's civil hazing statute, R.C. 2307.44. The statute incorporates the definition from R.C. 2903.31(A)(1): "doing any act or coercing another, including the victim, to do any act of initiation into any student or other organization . . . that causes or creates a substantial risk of causing mental or physical harm to any person." This requires (1) coercion; (2) an act of initiation into the organization; and (3) risk of harm.

14

Plaintiffs fail to allege facts supporting the essential elements of coercion or an "act of initiation," rendering this count untenable as a matter of law. Critically, Ohio courts narrowly construed hazing to distinguish it from mere bullying, harassment, or assault, noting that true hazing typically involves activities to which the participant *voluntarily* consents as part of gaining acceptance or membership into an organization. *See Golden v. Milford Exempted Village Sch. Dist. Bd. of Educ.*, 2011-Ohio-5355 (12th Dist.) (rubbing genitals on student's face did not constitute hazing, as acts were bullying to intimidate/dominate, not initiation; no consent or ritual); *Doe v. Pentz*, No. 2:07-cv-00319, 2010 U.S. Dist. LEXIS 164226 (S.D. Ohio Mar. 10, 2010) (granting summary judgment on a civil hazing claim arising from a brutal sexual assault on a high-school lacrosse player, holding that R.C. § 2307.44 did not apply because the conduct was not an initiation into a student organization and the plaintiff was already a member of the team); *Duitch v. Canton City Schs.*, 157 Ohio App.3d 80, 86 (5th Dist. 2004) (rejecting a hazing claim even where a freshman was lured into a restroom and beaten by upperclassmen, holding that the statute did not apply because the attack was not an initiation into a student organization and because "the concept of a student organization, in this context, does not mean simply attending a given high school and therefore being a member of the student body"). This is simply the wrong cause of action for the alleged facts under Ohio law. The Complaint falls short on every element, as the alleged conduct bears none of the indicia of hazing and instead alleges unprovoked assaults, which were certainly outside the scope of any IHFC activity.

Specifically, as to the IHFC Defendants' involvement, there are no plausible allegations that they knew of, condoned, or facilitated any purported "hazing." The prior notice deficiencies plaguing other counts also apply here, as Plaintiffs allege no facts showing IHFC or the Coaches

15

had knowledge of the 2024 "monkey" slurs. Further, the September 18, 2025, incident is depicted as an isolated, post-practice assault, not a recurring team ritual or initiatory practice. (*Id*. at ¶¶ 49, 94–99.) While the Complaint vaguely asserts a "failure to investigate or discipline" (*Id*. at ¶ 282), it provides no factual support for a pre-existing "team culture" of hazing, such as prior similar incidents during practices, group traditions, or coach encouragement. Without such allegations, liability cannot attach to the IHFC Defendants under the hazing statute, as the statute targets acts by or with the complicity of the organization, not remote third-party violence.

Also, the Complaint does not allege an initiatory purpose, which is the statute's core requirement. The Complaint repeatedly frames the attacks as "hate-motivated group attack[s]" driven by racial animus and hostility, not as rites of passage for team entry or acceptance. (*Id.* at ¶¶ 4, 31, 47, 105, 125, 309.) Relatedly, W.J. is described as *already* being "the only Black player on the football team" at the time of the September incident (*Id*. at ¶ 48), negating any notion of initiation; by definition, one cannot be "initiated" into a group they already belong to. Plaintiffs' attempt to shoehorn this into hazing by alleging the targeting occurred "as part of their affiliation with the team" (*Id*. at ¶ 308) is conclusory and conflates mere group membership with initiation; the former does not satisfy the latter. Moreover, the October 28, 2025, school recess attack occurred entirely outside IHFC's purview, under District supervision, further severing any tie to team initiation. (*Id*. at ¶¶ 105–125.) Allowing this claim to proceed would transform the hazing statute into a catch-all for any intra-group conflict, contrary to its narrow focus.

Moreover, there are no allegations of coercion or voluntary consent, which courts view as distinguishing hazing from assault. Hazing often implies some level of participant acquiescence or group pressure to conform, even if unwise. *See Golden*, 2011-Ohio-5355 at ¶ 22. Here, the

16

Complaint depicts W.J. as an unwilling victim of ambushes: during the September incident, he "attempted to run" and "tried to escape" (Compl. ¶ 94), "tore himself free" and fled in fear (*Id.* at ¶ 99), and was subjected to unprovoked violence without any prompting to perform an act. (*Id.* at ¶ 309.) The October attack similarly involved surprise assault without coercion. (*Id.* at ¶¶ 105–125.) The facts alleged do not align with Ohio's hazing statute. For these reasons, Count Twelve should be dismissed.

## IV.  CONCLUSION

In summary, across all counts, the Complaint's reliance on inaction, lack of foreseeability, and attenuated causation fails to establish plausible claims against the IHFC Defendants. Accordingly, the IHFC Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss all claims against them with prejudice.

Respectfully Submitted,

*/s/ Seth Alan Schwartz*
Seth A. Schwartz (0080961)
Ilana L. Linder (0095622)
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: 513-721-5525
Facsimile: 513-721-4268
Seth.schwartz@manleyburke.com
ilana.linder@manleyburke.com
*Co-Counsels for Defendants Indian Hill Football Club, Sean McChesney, Christopher N. Bortz, and Brian Currin*

17

*/s/ Michelle A. Cheek*
Michelle A. Cheek (0086476)
FLAGEL & PAPAKIRK LLC
50 E Business Way, Suite 410
Cincinnati, OH 45241
Phone: (513) 984-8111
Fax: (513) 984-8118
mcheek@fp-legal.com
*Co-Counsel for Defendants Indian Hill Football Club, Sean McChesney, Christopher N. Bortz, and Brian Currin*


/s/*Bradley A. Powell*
Bradley A. Powell (0034478)
DRODER & MILLER CO., L.P.A.
250 East Fifth Street, Suite 700
Cincinnati, Ohio 45202
513-721-1504 ext. 201
bpowell@drodermiller.com
*Attorney for Defendant Brian Currin*

CERTIFICATE OF SERVICE

    I hereby certify that on the 23rd day of January 2026, a copy of the foregoing was filed electronically using the ECF System for the United States District Court for the Southern District of Ohio. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

                                                          */s/ Michelle A. Cheek*
                                                          Michelle A. Cheek (0086476)

    I hereby certify that a true and accurate copy of the foregoing was served via regular US mail on the 23rd day of January 2026 upon the following:

| | |
|---|---|
| INDIAN HILL EXEMPTED VILLAGE SCHOOL DISTRICT<br>6855 Drake Road<br>Cincinnati, Ohio 45243 | WHITNEY BUELL<br>6855 Drake Road<br>Cincinnati, Ohio 45243 |
| BOARD OF EDUCATION OF THE INDIAN HILL EXEMPTED VILLAGE SCHOOL DISTRICT<br>6855 Drake Road<br>Cincinnati, Ohio 45243 | NATE EIGHER<br>6855 Drake Road<br>Cincinnati, Ohio 45243 |
| KIRK KOENNECKE<br>6855 Drake Road<br>Cincinnati, Ohio 45243 | COURTNEY STRITTMATTER<br>6855 Drake Road<br>Cincinnati, Ohio 45243 |
| JIM NICHOLS<br>6855 Drake Road<br>Cincinnati, Ohio 45243 | JONATHAN HOLLIS<br>6855 Drake Road<br>Cincinnati, Ohio 45243 |

                                                          */s/Michelle A. Cheek*
                                                          Michelle A. Cheek (0086476)